THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LESTER DAVENPORT, a/k/a LEROY SMITH, Defendant-Appellant.

(No. 58653; ▮▮▮▮▮▮▮▮▮

First District (4th Division)—September 25, 1974.

James J. Doherty, Public Defender, of Chicago (Harold A. Cowen, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and William F. Linkul, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:

In this appeal the defendant-appellant pleaded guilty on July 21, 1972, to the charges of murder and attempted murder contained in indictment 71-2163. On June 27, 1972, in an unrelated case the defendant had been found guilty in a bench trial of the offenses of attempted murder, attempted robbery and aggravated battery. These latter charges were contained in indictment 71-2164. Defendant received a sentence of from 15 to 30 years on indictment 71-2163 and from 10 to 14 years on indictment 71-2164. The sentences were to run concurrently. The sole issue

raised by the defendant is that his guilty plea was invalid and did not comply with Supreme Court Rule 402 (Ill. Rev. Stat. 1971, ch. 110A, par. 402) because he was not admonished as to the maximum sentence that could be imposed since he was not informed of the possibility of consecutive sentences where such possibility existed. We do not agree.

On July 21, 1972, the defendant was before the trial court for the purpose of making a motion for a new trial in regards to the charges contained in indictment 71-2164. The motion was denied and before the trial court proceeded to impose a sentence on indictment 71-2164, the court was informed by the assistant State's Attorney that he had had a discussion with defendant's counsel and that the defense requested a conference in regards to indictment 71-2163. The trial court asked the defendant if he had authorized his attorney to engage in such a conference between himself on defendant's behalf, the assistant State's Attorney and the court. The defendant responded affirmatively.

After the conference had been held, the defendant's attorney informed the trial court that he had advised the defendant of the results of the conference and that the defendant wished to withdraw his previously entered plea of not guilty to indictment 71-2163 and enter a plea of guilty. The trial court was informed that the change of plea was based on the conference. Defendant's attorney also stated that he had advised the defendant as to the consequences of a guilty plea and that he thought the defendant fully understood them. Defense counsel further stated that based on that full understanding the defendant stood on his decision to withdraw his plea of not guilty and enter a plea of guilty to the charges contained in indictment 71-2163.

The trial court advised the defendant as to the nature of the charges contained in indictment 71-2163 and the minimum and maximum sentence that could be imposed for murder. The trial court informed the defendant that if he pleaded guilty he waived his right to a trial by jury and his right to be confronted with witnesses against him. Defendant was also admonished by the court that he had a right to plead not guilty or that he could persist in his plea of guilty. The trial court asked the defendant, "Are you pleading guilty because in fact you are guilty of the charges contained in this indictment?" and defendant responded, "Yes."

The trial court asked the defendant if he understood that there had been a conference and that the court had indicated that upon a plea of guilty to indictment 71-2163 the sentence would be a minimum of 15 years and a maximum of 30 years. The defendant responded affirmatively. The trial court inquired as to whether any force, threats or promises were used to induce, persuade or compel defendant to plead guilty and defendant replied, "No." The trial court then accepted the defendant's plea of

guilty and after both sides stipulated to certain evidence and a hearing in aggravation and mitigation was held, the defendant was sentenced to 15 to 30 years on indictment 71-2163 and 10 to 14 years on indictment 71-2164. As stated previously, the sentences were to run concurrently.

■■ The defendant maintains that his guilty plea is invalid because the trial court in sentencing the defendant on the two unrelated indictments failed to admonish him as to the possibility of consecutive sentences. The defendant contends that the trial court violated Supreme Court Rule 402(a)(2) which requires that a defendant be informed prior to acceptance of a guilty plea of the "minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; * * *." While we agree with the defendant that the trial court did not admonish him as to the possibility of consecutive sentences, we do not agree that defendant's guilty plea is therefore invalid. A literal compliance with Supreme Court Rule 402 is not necessary but what is required is that the mandates of the rule be substantially followed. (*People v. Mendoza*, 48 Ill.2d 371, 270 N.E.2d 30 (1971).) As our supreme court stated in *Mendoza*, at page 374:

> "The fact that defendant was not specifically admonished by the court, on the record, as to each and every consequence of his plea does not sufficiently demonstrate that he was, in fact, unaware of these consequences."

In order to determine if there has been substantial compliance with Supreme Court Rule 402, it is necessary to examine the circumstances of each case and determine whether the defendant understood the consequences of his plea. *People v. Charleston*, 14 Ill.App.3d 452, 302 N.E.2d 687 (1973).

The record in the case at bar indicates that the trial court was most concerned with the defendant's awareness of the consequences of pleading guilty and that he was doing so understandingly, knowingly and voluntarily. The trial court comprehensively informed the defendant of the nature of the charge; the minimum and maximum penalty for murder; his right to plead not guilty; and his rights to a trial by jury and to confront the witnesses against him. In addition the trial court assured itself that no force, threats or promises were used to induce the defendant to plead guilty. The only failure of the court was in not informing the defendant that the sentences on indictment 71-2163 and indictment 71-2164 could be imposed consecutively. However, the court inquired of defendant whether he was aware of the fact a conference had been held and that the court had agreed to a sentence of 15 to 20 years if a plea of guilty was entered. The defendant indicated knowledge of these facts.

Furthermore, defendant's counsel informed the court that he had fully advised the defendant as to the results of the conference and the consequences of a guilty plea. It is evident from the record that there was substantial compliance with Supreme Court Rule 402.

The instant case is in agreement with this court's decision in *People v. Reed*, 3 Ill.App.3d 293, 278 N.E.2d 524 (1971). In *Reed*, the trial court had also failed to admonish the defendant as to the possibility of imposing consecutive sentences. However, in *Reed*, there had also been a negotiated plea and the record indicated the defendant knew in advance what the sentences would be. We found in *Reed* that there had been substantial compliance with Rule 402 and that the defendant had not been prejudiced in any manner. We make a similar finding in the case at bar. The record indicates that the defendant was thoroughly admonished as to the consequences of his plea of guilty and knew exactly what his sentence would be. The defendant's guilty plea was entered understandingly, knowingly and voluntarily and is not invalid.

The defendant places considerable reliance on *People v. Zatz*, 13 Ill. App.3d 322, 300 N.E.2d 16 (1973), and maintains that his case falls within the decision in *Zatz* which reversed a conviction on a guilty plea because the defendant had not been advised of the possibility of consecutive sentences. However, in *Zatz* there was no negotiated plea nor any indication in the record that the defendant knew what sentence would be imposed. Indeed the court in *Zatz* distinguished our decision in *Reed* when it stated at page 324:

> "*Reed* is distinguishable from *Zatz* in that *Zatz* did not enter negotiated pleas nor is there any indication in the record that he knew of the sentence to be recommended by the State's Attorney."

Defendant has also cited *People v. Flannigan*, 131 Ill.App.2d 1059, 267 N.E.2d 739 (1971), but it is distinguishable from the defendant's position on the same grounds as *Zatz* and in *Flannigan* consecutive sentences had been imposed.

During oral argument in this case the defendant made a motion for leave to cite additional authorities which was granted and defendant cited the cases of *People v. Zboralski*, 15 Ill.App.3d 343, 304 N.E.2d 484 (1973); *People v. Fairchild*, 133 Ill.App.2d 875, 272 N.E.2d 445 (1971); *People v. Buck*, 7 Ill.App.3d 758, 288 N.E.2d 548 (1972); and *People v. Spicer*, 10 Ill.App.3d 390, 294 N.E.2d 72 (1973). These cases are cited in support of the defendant's contention that a negotiated plea case should not be treated differently from a non-negotiated plea case in determining whether a court's admonishments sufficiently comply with Supreme Court Rule 402. What was at issue in *Zboralski*, *Fairchild* and *Buck* was not the trial court's failure to admonish the defendant as to the possibility of consecutive sentences but utilization of the phrase "an indeterminate

number of years" in describing the maximum penalty that could be imposed. This language has been held insufficient (*People v. Terry*, 44 Ill.2d 38, 253 N.E.2d 383 (1969)) and the courts held that the fact that the pleas were negotiated did not make a difference. The concern of the courts in these cases was that the phrase "an indeterminate number of years" did not apprise a defendant of the fact that the maximum penalty could be life imprisonment. The *Spicer* case also held that a neogtiated plea is not removed from Rule 402 but what was at issue was the trial court's total failure to advise the defendant of the minimum and maximum sentence that could be imposed. While these cases are helpful to the defendant's position, they are not directly in point.

■■ We agree with the defendant that a negotiated plea case should not be treated differently from a non-negotiated case but the fact that negotiations have taken place and the results spread across the record cannot be overlooked. The constitutional standard to determine the validity of a guilty plea was adequately set forth in *People v. Hartman*, 6 Ill.App.3d 543, 285 N.E.2d 600 (1972). The court there stated at page 544:

> "The constitutional standard in Illinois since 1948, both pre and post-*Boykin* (*Boykin v. Alabama*, 1969, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274), by which validity of a plea of guilty is to be determined is that it be intelligent and voluntary. *Boykin* does not alter or modify this standard, but only adds the requirement that if a guilty plea is to withstand appellate of post-conviction review the record must affirmatively disclose it was entered intelligently and voluntarily. (*People v. Reeves*, 1971, 50 Ill.2d 28, 276 N.E.2d 318.)"

A reviewing court's taking into consideration the fact that negotiations were entered and that the record establishes that the defendant knew of the negotiations and the results does not mean the court is treating a negotiated plea case differently than a non-negotiated case. The consideration of the negotiations and the defendant's knowledge of them applies to the question whether or not the plea was entered intelligently and voluntarily. When the record in the case at bar is read in a practical and realistic manner, it is evident that the defendant knew the consequences of a guilty plea and entered the plea understandingly, knowingly and voluntarily. We are of the opinion that there was substantial compliance with Supreme Court Rule 402.

For the reasons herein stated the judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

BURMAN and JOHNSON, JJ., concur.